# EXHIBIT 21





**WORLD SERVICE**

THOMSON
WEST

**Law.com's In-House Counsel**

Select **'Print'** in your browser menu to print this document.

©2007 *In-House Counsel* Online

Page printed from: http://www.inhousecounsel.com

Back to Article

## Plaintiffs Lawyers Hit on New Pharma Angle: State Clients

Petra Pasternak
The Recorder
April 3, 2007



For years, Hersh & Hersh has represented hundreds of users of a top-selling anti-psychotic drug in suits against its maker. Now the firm is taking on bigger clients against the same company: states that say they've been footing the public health costs from the drug.

H&H's first such client against pharmaceutical giant Eli Lilly & Co. is the state of New Mexico, which claims it spent about $18 million on Zyprexa-related medical expenses between 1999 and 2005.

The 10-lawyer San Francisco plaintiffs firm is taking on overhead to handle an expected uptick in work as more and more states -- which spend millions on the drug through Medicaid programs -- file suit. Although it can be a politically controversial move, states are hiring private law firms to represent them -- some on a contingency basis, some not.



Seven states have filed Medicaid cost recovery suits against Eli Lilly over the way it promoted Zyprexa, including Louisiana, Mississippi, West Virginia and, most recently, Pennsylvania. Others are gearing up to do the same. Alaska is expected to be the first to go to trial, in an Anchorage court next year.

The claims for states can be twofold: They may complain about medically unnecessary claims for reimbursement through Medicaid, and costs of treatment for side effects associated with the drug's use.

H&H partner Mark Burton said this new area of business for his

firm -- reminiscent of tobacco litigation in theory, if not in scope -- is promising because of the success of individual settlements and the increasing prevalence of commercially available prescription drugs. His firm has added five paralegals and legal assistants in the past nine months, and is looking to hire a lawyer with a background in state attorney general service.

"In the last decade, the cost to the state for pharmaceuticals has exploded. ... Most of that rapid expansion in health care costs is attributable to brand-name drugs," Burton said. "Because of that, there's a lot more at stake for states in how much they're paying out for these drugs and how much they can recover."

## BLOCKBUSTER DRUG

Hersh & Hersh sued Eli Lilly on behalf of about 425 individuals over Zyprexa in 2002. The suit claimed that the drug, approved for the treatment of schizophrenia and bipolar disorder, caused serious harm to people's health, most notably diabetes.

To date, Lilly has reportedly settled roughly 29,500 claims. In 2005, the Indianapolis-based company agreed to pay about $700 million to settle a series of suits with 8,000 people -- including Hersh clients -- although it still claimed the suits were without merit. In January, Lilly agreed to pay another $500 million to settle 18,000 more.

Thanks to the commercial success of Zyprexa, any fine or cost recovery in state-government litigation could be sizable, attorneys say. The drug has become Eli Lilly's best-selling product, with sales of $4.2 billion in 2005, when about 2 million people worldwide took the drug, according to *The New York Times*.

Fletch Trammell of Houston plaintiffs firm Bailey Perrin Bailey said four of his state clients are preparing to sue drug manufacturers for Medicaid fraud. He declined to name them. Trammell already represents Louisiana, which sued Eli Lilly over Zyprexa in 2004, and Mississippi, which filed suit last summer. Pennsylvania sued three drug makers in February, including Eli Lilly and AstraZeneca Inc.

The fundamental allegation in Trammell's cases, he said, is that the manufacturers had promoted drugs for uses other than the illnesses for which they had been approved. "We plead these cases entirely on violation of state law," Trammell said.

"Legislatures take Medicaid and government fraud very seriously and there are very serious and stiff penalties," he added. "The damages in these cases -- particularly in the anti-psychotic drug cases -- tend to be very large because they have been, and continue to be, very widely used drugs."

Eli Lilly spokesperson Marni Lemons said the company's lead national litigation counsel, 450-attorney Pepper Hamilton based in Philadelphia, is working with local counsel in each of the seven jurisdictions.

"Lilly intends to vigorously defend these cases," Lemons said in an e-mail.

Brewster Jamieson, who represents Eli Lilly in the Alaska case, said these state-government suits are in their infancy but he expects more to come. "Attorneys are looking for ways to bring money into state coffers," he said, adding that he doesn't anticipate that these cases will be as lucrative as the tobacco suits.

## NOT DIVING IN

Some local plaintiffs lawyers are a bit more cautious about getting into this arena. William Audet of San Francisco's Audet & Partners, which represents 250 individuals who opted out of a Zyprexa settlement, says he, too, has met with attorney generals around the country to see if there's a match. Because state-government pharmaceutical cases can be complicated and long, however, Audet said he's careful in selecting clients.

"It's a lot of work," he said. "It's not just file and settle. These companies are not just opening their pocketbooks. It's a significant commitment of resources."

In addition, state attorneys have to consider any potential political ramifications associated with hiring private law firms to do work on their behalf. Accordingly payment schemes vary widely -- from contingency-based fees to blended rates in which the client shares the cost with the firm. "Every state is a little different," Audet said.

The attorney general's office of New Mexico, for example, doesn't outsource professional services on a contingency fee basis. Deputy Attorney General Albert Lama said that in order to avoid state constitutional issues, the office takes a conservative approach when entering into contracts with service providers.

"No structured percentage award is built into the contract [with Hersh & Hersh]," Lama said. "If there is no success in the litigation, the firm would not get any recovery for the legal fees." Under the contract, however, the firm could still seek to get reimbursement for costs and expenses if it loses.

And if it wins, the court will be asked to consider the actual amount of time the firm spent on the case, the complexity of the issues and the fees customarily charged in like litigation, among other criteria. "It's not automatic," Lama said.

Hersh & Hersh is working on the New Mexico case with former San Francisco City Attorney Louise Renne, who heads the public interest litigation practice at Renne Sloan Holtzman Sakai. Asked if teaming with Renne Sloan offers a political in for H&H, Burton said no. Renne's firm offers strategic advice and helps with tasks like document reviews, he said.

For now, Burton's waiting to see which state will be next to file suit, hoping he'll be the one taking it to court.