# EXHIBIT 25

JAN RAYMOND
# LEGISLATIVE | HISTORY & INTENT

# GOVERNMENT CODE

## SECTIONS 12650 TO 12656

### A COMPLETE HISTORY

# VOLUME 1 OF 3

P.O. Box 74005, Davis CA 95617 | Phone: (888) 676-1947 | Fax: (530) 750-0190 | www.naj.net

# USING THIS REPORT

Legislative intent is a matter of law often resolved by a factual inquiry. As a matter of law decided by the court, rules of evidence developed to protect juries have no applicability. Factual inquiries into Legislative Intent need only address two issues, the authenticity of the information relied upon and the probative value of the information.

## Probative Value Overview

Legislative documents vary in their probative value. Documents that are developed as a formal part of the legislative process are inherently reliable and therefore of high probative value due to the scrutiny imposed by the formal requirements of legislative procedures. Documents developed as a formal part of the legislative process can therefore often be primary evidence of intent. Other documents are of value as circumstantial evidence of intent. For example, simple file documents are of lesser probative value due to the lack of scrutiny imposed on documents a legislator or legislative staff person may choose to file. However, a simple file document may rise in probative value to the level of a primary source if supported by corroborative statements in other documents.

## Procedure - If You Are In A California Court

Evidence Code Sections 450 to 454 provide authority for a court to take judicial notice of documents relating to legislative history. A leading case citing Evidence Code Section 452(c) as authority for a court to take judicial notice of legislative documents is Post v. Prati, 90 Cal. App. 3d 626 (1979). The court relied upon a variety of legislative documents, including correspondence to the Governor from state agencies and individual legislators. Although a formal request for judicial notice is better practice, in Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 39 Cal. App. 4th 1379, the court accepted and relied upon legislative documents simply appended to a brief, apparently with no formal request for judicial notice. But practice varies within different Appellate districts, in the third Appellate District a formal procedure has been established (see discussion at www.naj.net/using.htm).

## Procedure - If You Are In Federal Court or Another State Court

Procedures vary from jurisdiction to jurisdiction. Generally a Federal Court exercising diversity jurisdiction and seeking to determine the intent of a State legislative enactment will look to the law of that State to determine how the State statute is to be interpreted. (See 28 USC Section 1652). State procedural rules will be followed as long as there is no direct conflict with the federal rules. (Hanna v. Plummer, 380 U.S. 460 (1965)).

## Fees for Obtaining Legislative History As Costs

Legislative history documentation obtained from a commercial service can be claimed as costs under CCP 1033.5. Van DeKamp v. Gumbiner, (1990) 221 Cal. App. 3d, 1260.

## Further Authorities

A brief overview of frequently cited authorities and topical treatises regarding the use of legislative history documents can be found on the back cover of this report. More detailed discussion and sample judicial notice forms are available at our web page at www.naj.net/using.htm.

# Abstract

## *Terms of Research:*

This research was conducted as a thorough substantive review of the history of Government Code Sections 12650 to 12656 to be forwarded with authenticating declaration/document index.

## *Documents:*

Digital copies of this report are posted at http://najfiles.net/rpt/070917.12650

We report in three volumes. This volume 1 of 3 contains materials on the enactment of this body of law in 1987 up through the 1994 amendment. Volume 2 of 3 contains materials on the enactments from 1996 to 1997. Volume 3 of 3 contains materials on the enactments in 1998, 1999 and 2001.

The documents in the report and within each volume are organized in generally chronological order, from the earliest dated documents to the latest. The declaration that follows this document provides an index to the documents and identifies the source of the documents.

## *Findings:*

1987 c.1420 enacted the False Claims Act. Assembly Bill 1441 was introduced by Assembly member Floyd was the vehicle for this enactment. AB 1441 was an adaptation of a recently enacted Federal law, as adapted by the Center for Public Interest in Los Angeles for California adoption. Much of the language was drafted by the Center for Public Interest; their section-by-section comments are at document early in the collection.

We also include an excerpt from the November 6, 1990 ballot pamphlet for a proposition in which the voters rejected a proposed 12650.1, which would have brought timber-harvesting plans within the False Claims Act.

The amendments accomplished by 1994 c. 1010, Senate Bill 2053, simply added references to Limited Liability Companies to Section 12650 as an adjunct to other legislation that was simultaneously creating LLC's in California.

---

Find Authorities on using legislative documents, definitions of legislative terms, a brief summary of
the legislative process and other information pertinent to legislative history
and legislative intent at our web page
**www.naj.net**

1

# DECLARATION OF JAN S. RAYMOND

2

3

4

I, Jan Raymond, declare:

5

I am an attorney licensed to practice by the California State Bar, State Bar number 88703, and admitted
to practice in the United States Federal Court for the Eastern District of California.  My business is
researching legislative history and interpreting legislative intent; I have over 15 years experience in
legislative research and analysis of legislative intent.

6

7

8

In cooperation with persons working under my supervision, I undertook to research the legislative history
of the following project.  All use of the word "project" in this declaration refers to legislative research
addressed to this focus:

9

10

**Government Code Sections 12650 to 12656**
    A complete history.

11

We report in three volumes.  This volume 1 of 3 contains materials from the 1987 and 1994 enactments
as well as the November 1990 Ballot Pamphlet on General Election.  Volume 2 of 3 contains materials
from the three 1996 enactments and the 1997 enactment.  Volume 3 of 3 contains materials from the
1998, 1999 and 2001 enactments.

12

13

14

At all times, all persons working on this project operated under instructions to locate all documents
available pertinent to this adoption.  This research was compiled in the days immediately prior to the date
of this declaration, and reflects all the documents, and sources, available during that time pertinent to this
project.

15

16

The documents listed are the substantive documents collected pertinent to the history of this project.  The
term "substantive documents" as used in the previous sentence refers to those documents relevant to the
scope of the project.  Some documents regarding the proposal related to this project may not be
forwarded in this report.  Documents not forwarded may include fiscal analyses addressing the budgetary
impact of legislation, documents addressing other portions of the proposal not directly relevant to the
project, documents addressing simple support for or opposition to the proposal, or other documents
unlikely to be helpful in understanding the substantive purpose of the proposal.  The complete collection
of documents is organized in generally chronological order and sequentially numbered.

17

18

19

20

21

The California Legislature historically has not regularly recorded and/or transcribed committee or floor
proceedings.  But in recent decades, individual committees have sporadically recorded, and in some
cases transcribed, committee proceedings.  In addition, a select few committee, and many floor,
proceedings since the early 1990's are available on videotape.  Beginning in the 2003-2004 session, an
effort has been made to record almost all legislative proceedings in either audio or video format, although
the effort is informal rather than mandated by detailed legislative rules and procedures.  The recordings
available in all media are uniformly difficult and time-consuming to access, rarely transcribed, and rarely
contain substantive discussion that goes beyond the most simple and basic assertions about the
legislation in question.   In general, the documentary history contains much more detailed discussion of
the intent and purpose of the bill under consideration.  Therefore, this report was compiled using
documentary sources only.

22

23

24

25

26

27

Individual documents may appear in multiple locations or files.  We endeavor to obtain only one copy of
the document.  Where it is clearly important, we endeavor to note each source of the document in this

28

(888) 676-1947          **Declaration of Jan Raymond**          Page 1 of 5
**For definitions of the legislative terms used in this declaration,**
**visit the California law page at**
**www.naj.net**

1

declaration. But some documents for which we cite a single source may in fact have been found in multiple locations. Where this raises an issue important in individual circumstances, all source locations of particular documents can be identified upon request.

2

3

All documents listed are included with this declaration, except as otherwise noted in this declaration. All documents included are true and correct copies of the original documents. Unless otherwise noted in this declaration, all documents were obtained at one of the following sources: legislative offices at the State Capitol, the California State Library, the California State Archives, or libraries at the University of California at Davis. References to "bill file" as used in this declaration refer to files maintained regarding the legislation that is the subject of the document collection. Some documents copied from microfilm originals may be of poor quality; all copies included with this report are the best available copies.

4

5

6

7

In this list of documents the abbreviation SFA refers to the Office of Senate Floor Analyses, ARC refers to the Assembly Republican Caucus, SDC refers to the Senate Democratic Caucus, SRC refers to the Senate Republican Caucus, and CLRC refers to the California Law Revision Commission. References to the legislative counsel web site refer to www.leginfo.ca.gov/bilinfo.ca.gov.

8

9

**The following documents accompany this declaration:**

10

***1987 Chapter 1420***

11

Excerpt regarding Assembly Bill 1441 (Floyd and Areias) from the Assembly Final History, 1987-88 Regular Session. ... Page 1

12

AB 1441 as introduced March 4, 1987. ... Page 3

13

Letter dated March 6, 1987, Allen Sumner to author, regarding AB 1441 as introduced, with three attachments, from the bill file of the Assembly Committee on Judiciary, nine pages. ... Page 7

14

Memorandum dated March 19, 1987, regarding AB 1441 as introduced, from the bill file of the Assembly Committee on Judiciary, three pages. ... Page 17

15

16

Documents regarding AB 1441 as introduced, from the bill file of the Assembly Committee on Judiciary, two pages. ... Page 21

17

Documents regarding AB 1441 as introduced, from the bill file of the author, three pages. ... Page 23

18

Letter dated April 8, 1987, with attached draft of California False Claims Act from the bill file of the author (cover letter only found in Assembly Committee on Judiciary file), twenty-five pages. ... Page 27

19

20

Letters dated April 24, 1987, with attached section by section analysis of the False Claims Act, from the bill files of the Assembly Committee on Judiciary and the author, thirty-eight pages. ... Page 53

21

AB 1441 as amended in the Assembly April 29, 1987. ... Page 91

22

Letter dated April 30, 1987, Greene to Floyd, regarding AB 1441 as amended April 29, 1987, from the bill file of the Assembly Committee on Judiciary, one page. ... Page 109

23

24

Assembly Committee on Judiciary analyses of AB 1441 as amended April 29, 1987, prepared for hearing May 6, 1987, with handwritten notes, sixteen pages. ... Page 111

25

Letter dated May 8, 1987, regarding AB 1441 as amended April 29, 1987, from the bill file of the Assembly Committee on Judiciary, one page. ... Page 127

26

27

28

(888) 676-1947          **Declaration of Jan Raymond**          Page 2 of 5
For definitions of the legislative terms used in this declaration, visit the
California law page at
**www.naj.net**

| | | |
|---|---|---|
| 1 | AB 1441 as amended in the Assembly May 18, 1987. | Page 129 |
| 2 | Assembly Committee on Judiciary analysis of AB 1441 as amended May 18, 1987, nine pages. | Page 145 |
| 3 | Department of Finance analysis of AB 1441 as amended May 18, 1987, two pages. | Page 155 |
| 4 | Assembly Committee on Ways and Means Republican analyses of AB 1441 as amended May 18, 1987, two pages. | Page 157 |
| 5 | Board of Control No Analysis Required on AB 1441 as amended May 18, 1987, one page. | Page 159 |
| 6 | Statement on AB 1441, dated June 9, 1987, from the bill file of the author, one page. | Page 161 |
| 7<br>8 | Letter dated June 10, 1987, regarding AB 1441, with attached Department of Justice Bill Analysis of AB 1441, from the bill file of the author, eight pages. | Page 163 |
| 9 | Assembly Committee on Judiciary Republican analysis of AB 1441 as amended May 18, 1987, one page. | Page 171 |
| 10 | Assembly Third Reading analysis of AB 1441 as amended May 18, 1987, four pages. | Page 173 |
| 11<br>12 | Floor Statement on AB 1441, Assembly Third Reading, June 15, 1987, from bill file of the author, one page. | Page 177 |
| 13 | Senate Committee on Judiciary Background Information Sheet on AB 1441, with associated documents from the bill file of the committee, six pages. | Page 179 |
| 14 | Letter dated June 29, 1987, with attached State Personnel Board report, six pages. | Page 185 |
| 15<br>16 | Assembly Committee on Judiciary worksheet on AB 1441, with attached documents from the bill file of the committee, nine pages. | Page 191 |
| 17 | Documents regarding AB 1441 as amended May 18, 1987, from the bill file of the author, five pages. | Page 201 |
| 18 | AB 1441 as amended in the Senate July 9, 1987. | Page 207 |
| 19<br>20 | Senate Committee on Judiciary analysis of AB 1441 as amended July 9, 1987, prepared for hearing July 14, 1987, ten pages. | Page 223 |
| 21 | Statement on AB 1441, Senate Judiciary Committee, July 14, 1987, from the bill file of the author, one page. | Page 233 |
| 22 | AB 1441 as amended in the Senate August 18, 1987. | Page 235 |
| 23 | SFA Third Reading analysis of AB 1441 as amended August 18, 1987, five pages. | Page 251 |
| 24<br>25 | Floor Statement on AB 1441, Senate Third Reading, August 27, 1987, from the bill file of the author, one page. | Page 257 |
| 26 | Department of Finance analysis of AB 1441 as amended August 18, 1987, two pages. | Page 259 |
| 27 | Concurrence in Senate Amendments analysis of AB 1441 as amended August 18, 1987, eight pages. | Page 261 |

28

(888) 676-1947          **Declaration of Jan Raymond**          Page 3 of 5
For definitions of the legislative terms used in this declaration, visit the
California law page at
**www.naj.net**

| | |
|---|---|
| Memoranda from the file of the Assembly Committee on Judiciary, four pages. | Page 269 |
| Senate Floor Amendments summary of AB 1441, dated 9/4/87, from the bill file of the Senate Committee on Judiciary, one page. | Page 273 |
| AB 1441 as amended in the Senate September 8, 1987. | Page 275 |
| SFA Third Reading analysis of AB 1441 as amended September 8, 1987, five pages. | Page 291 |
| Concurrence in Senate Amendments analysis of AB 1441 as amended September 8, 1987, three pages. | Page 297 |
| Documents regarding AB 1441 as amended September 8, 1987, from the enrolled bill file of former Governor George Deukmejian and the bill file of the author, six pages. | Page 301 |
| Chapter 1420, Statutes of 1987. | Page 307 |
| Excerpt regarding Chapter 1420 from Summary Digest for 1987. | Page 319 |

**_November 1990 General Election_**

| | |
|---|---|
| California Ballot Pamphlet: General Election, November 6, 1990. | Page 321 |

**_1994 Chapter 1010_**

| | |
|---|---|
| Excerpt regarding Senate Bill 2053 (Killea) from the Senate Final History, 1993-94 Regular Session. | Page 337 |
| Excerpt regarding Section 12650 from SB 2053 as introduced February 25, 1994. | Page 341 |
| Senate Committee on Insurance, Claims and Corporations analysis of SB 2053 as introduced, prepared for hearing April 6, 1994. | Page 343 |
| SFA Special Consent analysis of SB 2053 as introduced, dated May 23, 1994. | Page 347 |
| Agency analysis of SB 2053 as introduced, from the bill file of the SFA, three pages. | Page 349 |
| Excerpt regarding Section 12650 from SB 2053 as amended in Assembly June 13, 1994. | Page 353 |
| Agency analysis of SB 2053 as amended June 13, from the bill file of the SFA, one page. | Page 359 |
| Excerpt regarding Section 12650 from SB 2053 as amended in Assembly July 2, 1994. | Page 361 |
| Assembly Committee on Judiciary Analysis of SB 2053 as amended July 2, prepared for hearing July 6, 1994. | Page 367 |
| Analysis of SB 2053 as amended July 2, from the bill file of the SFA, one page. | Page 369 |
| Excerpt regarding Section 12650 from SB 2053 as amended in Assembly August 8, 1994. | Page 371 |
| Analyses of SB 2053 as amended August 8, from the bill file of the SFA, three pages. | Page 377 |
| Excerpt regarding Section 12650 from SB 2053 as amended in Assembly August 22, 1994. | Page 381 |

(888) 676-1947          **Declaration of Jan Raymond**          Page 4 of 5
For definitions of the legislative terms used in this declaration, visit the
California law page at
**www.naj.net**

1  SFA Unfinished Business Analysis of SB 2053 as amended August 8, 1994, dated August 25, 1994.                                                                                     Page 387

2

3  Documents regarding SB 2053, from the enrolled bill file of former Governor Pete Wilson, eight pages.                                                                              Page 391

4  Excerpt regarding Section 12650 from Chapter 1010, Statutes of 1994.                Page 399
                                                            This collection ends with page 404

5

6  **I declare under penalty of perjury the foregoing is true and correct.**

7  Executed at Davis, California, September 25, 2007.

8

Jan Raymond

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    (888) 676-1947              **Declaration of Jan Raymond**                    Page 5 of 5
                    For definitions of the legislative terms used in this declaration, visit the
                                          California law page at
                                            **www.naj.net**

**VOLUME 1**

## CALIFORNIA LEGISLATURE

### AT SACRAMENTO

1987–88 REGULAR SESSION
1987–88 FIRST EXTRAORDINARY SESSION

# ASSEMBLY FINAL HISTORY

### SYNOPSIS OF

ASSEMBLY BILLS, CONSTITUTIONAL AMENDMENTS, CONCURRENT,

JOINT, AND HOUSE RESOLUTIONS

Assembly Convened December 1, 1986
Recessed December 3, 1986                    Reconvened January 5, 1987
Recessed April 9, 1987                       Reconvened April 20, 1987
Recessed July 16, 1987                       Reconvened August 17, 1987
Recessed September 11, 1987                  Reconvened January 4, 1988
Recessed March 24, 1988                      Reconvened April 4, 1988
Recessed June 30, 1988                       Reconvened August 1, 1988
Adjourned September 1, 1988
Adjourned Sine Die November 30, 1988
Legislative Days.................................................................. 246

HON. WILLIE L. BROWN JR.
*Speaker*

HON. MIKE ROOS                           HON. PHILLIP ISENBERG
*Speaker pro Tempore*                    *Assistant Speaker pro Tempore*

HON. THOMAS HANNIGAN                     HON. PAT NOLAN
*Majority Floor Leader*                  *Minority Floor Leader*

Compiled Under the Direction of
.R. BRIAN KIDNEY
*Chief Clerk*

GUNVOR ENGLE
*History Clerk*

A.B. No. 1441—Floyd and Areias (Senators Davis and Lockyer, coauthors).

An act to add Article 9 (commencing with Section 12650) to Chapter 6 of Division 3 of Title 2 of the Government Code, relating to claims against the state.

**1987**

Mar.    4—Read first time. To print.

Mar.    5—From printer. May be heard in committee April 4.

Mar.    17—Referred to Com. on JUD.

April   8—In committee: Set, first hearing. Hearing canceled at the request of author.

April  22—In committee: Set, second hearing. Hearing canceled at the request of author.

April  29—From committee chairman, with author's amendments: Amend, and re-refer to Com. on JUD. Read second time and amended.

May     4—Re-referred to Com. on JUD.

May    14—From committee: Amend, and do pass as amended, and re-refer to Com. on W. & M. (Ayes 6. Noes 1.) (May 6).

May    18—Read second time and amended.

May    20—Re-referred to Com. on W. & M.

June   10—From committee: Do pass. (Ayes 13. Noes 10.) (June 9).

June   11—Read second time. To third reading.

June   22—Read third time, passage refused. (Ayes 36. Noes 38. Page 2923.) Motion to reconsider on the next Legislative day made by Assembly Member Floyd.

June   23—Motion to reconsider continued until next Legislative day.

June   24—Motion to reconsider continued until next Legislative day.

June   25—Reconsideration granted. Read third time, passed, and to Senate. (Ayes 42. Noes 35. Page 3154.)

June   29—In Senate. Read first time. To Com. on RLS. for assignment. Referred to Com. on JUD.

July    9—From committee chairman, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on JUD.

Aug.   17—From committee: Amend, do pass as amended, and re-refer to Com. on APPR. (Ayes 8. Noes 0.).

Aug.   18—Read second time, amended, and re-referred to Com. on APPR. (Corrected August 24. )

Aug.   25—From committee: Be placed on second reading file pursuant to Senate Rule 28.8.

Aug.   26—Read second time. To third reading.

Sept.   1—Read third time, passed, and to Assembly. (Ayes 39. Noes 0. Page 3460.)

Sept.   2—In Assembly. Concurrence in Senate amendments pending.

Sept.   8—Ordered returned to Senate.

Sept.   8—In Senate. Action rescinded whereby bill was read third time, passed and to Assembly. Read third time, amended, and returned to third reading.

Sept.  10—Read third time, passed, and to Assembly. (Ayes 37. Noes 0. Page 3850.)

Sept.  11—In Assembly. Senate amendments concurred in. To enrollment. (Ayes 44. Noes 36. Page 5146.)

Sept.  18—Enrolled and to the Governor at 12 m.

Sept.  30—Approved by the Governor.

Sept.  30—Chaptered by Secretary of State - Chapter 1420, Statutes of 1987.

**CENTER FOR LAW
IN THE PUBLIC INTEREST**
10951 WEST PICO BOULEVARD
THIRD FLOOR
LOS ANGELES, CALIFORNIA 90064-2166
TELEPHONE: (213) 470-3000



*controller - enforcing agent*

**LEGAL STAFF**
LISA FOSTER
CARLYLE W. HALL, JR., CO-DIRECTOR
BILL LANN LEE
JOHN R. PHILLIPS, CO-DIRECTOR
JOEL R. REYNOLDS
FREDRIC D. WOOCHER

**OF COUNSEL**
GEOFFREY COWAN
LUCAS GUTTENTAG
SUSAN B. JACOBY

**VICE PRESIDENT**
MARSHA H. KWALWASSER

**VISITING FELLOWS**
STEPHEN M. CUTLER
CARRIE L. HEMPEL
DAVID HUEBNER
MARTHA JIMENEZ

April 24, 1987

*John has dealt directly w/ Vande Kamp*

Ms. Deborah DeBow
Assembly Judiciary Committee
State Capitol, Rm. 6005
P. O. Box 942849
Sacramento, CA 94249-0001

Dear Deborah:

Enclosed is a draft section-by-section analysis of
the version of the California False Claims Act that we
prepared. This document explains much of the rationale for
how we adapted the federal act for state purposes, and
provides, indirectly, a useful critique of the original
Floyd bill.

If what I hear is correct, I am happy that
Mr. Floyd and Mr. Areias have now agreed to sponsor the bill
together. The Center has a strong interest in working for
passage of the best legislation possible, and we look
forward to remaining involved in the process.

Please give me a call if you have any questions or
concerns. I look forward to hearing how matters are
progressing. Thanks.

Sincerely,

David Huebner

DH:pmk
Encl.

**BOARD OF TRUSTEES**

| | | | | | |
|---|---|---|---|---|---|
| HOWARD L. BERMAN | ROBERT A. GREENFIELD | MICHAEL R. KLEIN | VICTOR H. PALMIERI | STANLEY K. SHEINBAUM | TRACY WESTEN |
| GEOFFREY COWAN | CARLYLE W. HALL, JR. | WESLEY MARX | JOHN R. PHILLIPS | ALAN STAMM | FRANCIS M. WHEAT |
| MARGOT E. FEUER | ELIZABETH H. HOROWITZ | GLADYS MEADE | BRENT N. RUSHFORTH | DONALD M. WESSLING | WERNER WOLFEN |



# Center for Law in the Public Interest

Phone: (213) 470-3000          10951 West Pico Boulevard, Los Angeles, California 90064

1441

**CALIFORNIA FALSE CLAIMS ACT**


SECTION-BY-SECTION ANALYSIS

OF

DRAFT PREPARED BY

CENTER FOR LAW IN THE PUBLIC INTEREST

LG45#1

Background

        The California False Claims Act is patterned after the 1986 Federal False Claims Act, codified in Title 31 of the U.S. Code, at Section 3729-31. Known as the Lincoln Law, the original Federal False Claims Act was enacted in 1863 to combat widespread corruption and fraud in Civil War defense contracts. The Act imposed both civil and criminal penalties for knowingly submitting a false claim to the Government. The Act also provided for qui tam suits, that is, suits brought by individuals in the name of the Government to recover funds fraudulently taken from the Government.

        In the 1970s and 80s, reports of widespread corruption against the Government surfaced once again. Evidence of fraud in federal government programs and procurement was increasing dramatically. In 1984, the Department of Defense conducted 30% more fraud investigations than it had in 1982. Between 1983 and 1986, the Department of Health and Human Services nearly tripled its prosecution referrals of fraud involving entitlement programs. Evidence of fraud on the State and local level has also increased dramatically. Newspapers give daily accounts of fraud against our state governments, local school districts, and a variety of other local entities. Most disturbing, of a 1981 study by the General Accounting Office concluded that most fraud goes undetected.

        Those who have studied the federal fraud problem, including the General Accounting Office, Department of Justice, and Inspectors General, estimate that the range of the loss of public money could be from hundreds of millions of dollars to

LG45#1

more than $50 billion in federal funds per year. The loss at the state and local level could match or surpass the losses sustained on the federal level because of the multiplicity of agencies controlling or directing funds and the lack of sufficient oversight of such fund distribution.

In 1986, both the House and Senate passed amendments to the Federal False Claims Act which would strengthen and clarify the Government's ability to detect and prosecute civil fraud. The Federal Act does not address the problems of fraud in State and local programs. The proposed California False Claims Act, patterned directly after the Federal False Claims Act, will substantially strengthen the ability of State and local entities to deter fraud and to regain financial losses resulting from fraud.

## Section 1.  Preamble

This section declares legislative findings and public policy reasons supporting the enactment of a state counterpart to the federal false claims act.  The purpose of this preamble section is to explain and clarify ambiguities inherent in an enactment of this nature.  By presenting the basic principles and policy choices undergirding this Act, the legislature seeks to provide some guidelines to the courts for processing and interpreting subsequent circumstances or conduct under this Act that is not specifically or clearly addressed herein.

The Preamble consists of legislative findings and declarations relating to the growing incidence of fraud and corruption on the State and local levels.  In addition, subsection (b) of the Preamble provides a summary of the major elements of the California False Claims Act.

In short, the Preamble section to the California False Claims Act is both a necessary introduction for persons unfamiliar with the purpose and nature of the Act, and an essential guidance for the Courts in interpreting and implementing its provisions.

## Section 2.  Short Title

This section provides that the short title for this bill will be the "California False Claims Act."

## Section 3.  Definitions

Subsection 3(a) defines the term "claim" to include any request or demand for money, property or services made to any employee, officer or agent of the State or political subdivision or to any other recipient of State or local funds, whether under contract or not, if any portion of the money, property or services requested or demanded was in any way provided by the State or any political subdivision.

This section recognizes that a false claim may take many forms, the most common being a claim for goods or services not provided, or provided in violation of a contract term, statute or regulation.  This definition clearly covers false claims for reimbursement made upon any State or local agency or instrumentality as well as any claims or false statements made to a party other than the State or a political subdivision if payment or receipt thereon would result in a loss to the State or political subdivision.  For example, this definition covers claims for reimbursement under MediCal where no services were provided, or where services are provided but the claimant is ineligible to participate in the program.  This definition also covers false demands made upon grantees or recipients of State or political subdivision funds for any portion of such funds.

Statements or claims filed for the purpose of reducing an obligation owed to the State or political subdivision (reverse false claims) are equally actionable under this section.

Under this definition, each separate bill, voucher, or other "false payment" demand constitutes a separate claim for

LG45#1

which a forfeiture shall be imposed.  This is true although a number of such claims may be submitted to the State or political subdivision at one time.  By defining claim in this way, this section emphasizes the serious nature of activity that defrauds State or local governments of funds.

Subsection 3(b) defines "knowing" or "knowingly" as meaning:  (1) actual knowledge of the information; (2) deliberate ignorance of the truth or falsity of the information; or (3) reckless disregard of the truth or falsity of the information.

This definition of knowledge includes not only those individuals who file a claim with actual knowledge that the information is false, but also those individuals who deliberately ignore or act in reckless disregard of the falsity of the information contained in the claim.  It is intended that persons who ignore "red flags" that the information may not be accurate, or who deliberately choose to remain ignorant of the process through which the company handles a claim, or who fail to make simple inquiries which would alert them that false claims are being submitted, shall be held liable under the Act. This definition, therefore, enables the State or political subdivision not only to effectively prosecute those persons who have actual knowledge, but also those who play "ostrich."

Subsection 3(c) defines a "political subdivision" as including "any city, city and county, county, tax or assessment district, or other legally authorized local governmental entity with jurisdictional boundaries."  This definition was created to sweep as broadly as possible to encompass every possible local

LG45#1

authority using local funds.  "Political subdivision" as defined
in this subsection must be differentiated from political
entities which are wholly state funded.

Subsection 3(d) defines a "prosecuting authority" as
referring to "the county counsel, city attorney, or other local
government official charged with investigating, filing, and
conducting civil legal proceedings on behalf of or in the name
of a particular subdivision."  This definition was designed to
distinguish between the roles and responsibilities of local
prosecuting entities in claims involving local funds and the
Attorney General in claims involving State funds.

Subsection 3(e) defines a "person" as any "natural
person, corporation, firm, association, organization,
partnership, business or trust."

## Section 4.  False Claims Liability

Subsection 4(a) presents an extensive, though not
exhaustive, list of actionable conduct or activity under this
Act.  Any person, as defined in subsection 3(e) engaging in
conduct prohibited under this section shall be jointly and
severally liable to the State of California or to the political
subdivision for a civil penalty of not less than $5,000 nor more
than $10,000 for each false claim, plus three (3) times the
amount of damages which the State or the political subdivision
sustains because of the act of that person.  Any person
violating this subsection shall also be jointly and severally
liable to the State or to the political subdivision for the

costs of a civil action brought to recover any such penalty or damages.

Modeled upon the federal False Claims Act, this section imposes a civil penalty of triple the amount of damages suffered by the State or political subdivision plus a $5,000 to $10,000 forfeiture for each claim submitted or caused to be submitted in violation of this section.  This automatic and mandatory forfeiture for each claim found to be false emphasizes the serious nature of conduct which, by defrauding state and local governments of funds, defrauds the entire citizenry of California.  Thus, to recover forfeitures under this section, a State or political subdivision need only show that false claims were made.  No proof of damages nor showing of payment on the claim is required.  Fleming v. United States, 336 F.2d 475, 480 (10th Cir. 1964) cert. den. 380 U.S. 907 (1965); United States v. American Precision Products Corp., 115 F. Supp. 823 (D. NJ. 1953).

Actionable conduct under this section is listed under paragraphs 4(a)(1)-(a)(8).  This list is illustrative and not exclusive of the types of false claims actionable under this Act.

Paragraph (a)(1) describes the most common and straightforward method of defrauding the State or local political subdivision which is by presenting or causing to be presented a false bill, voucher, or other claim for payment or approval.

Paragraph (a)(2) proscribes yet another level of falsity, such that false documents or records are created or

LG45#1

presented to support the payment or approval of a false claim.

Paragraph (a)(3) seeks to reach incidents of collusion between two or more persons directed to getting a false claim allowed or paid by the State or by any political subdivision.

Paragraph (a)(4) reaches circumstances whereby a person either by virtue of his or her employment with the State or political subdivision, or as a messenger, carrier or similar entity comes into possession, custody, or control of public property or money and knowingly delivers less money or property than that represented and for which the person receives a certificate or receipt. This paragraph seeks to deter persons in positions of responsibility and authority from abusing that power. This paragraph also seeks to discourage skimming by carriers and messengers.

Paragraph (a)(5) reaches situations whereby a person authorized to make or deliver documents certifying the receipt of property used or to be used by the State or political subdivision knowingly delivers a receipt that falsely represents property used or intended to be used.

Paragraph (a)(6) reaches situations involving a person who buys public property or receives such property as a pledge of an obligation or debt knowing that the person selling the property or making the pledge may not lawfully do so.

Paragraph (a)(7) reaches activity colloquially designated as a "reverse false claim" such that a person will be liable for every  misstatement or false record knowingly made, used or caused to be used to conceal, avoid or decrease an

LG45#1

obligation of money or property owed to the State or political subdivision.

Paragraph (a)(8) is intended to reach situations where a person benefits from grossly negligent or inattentive business practices with the government by the inadvertent submission of a false claim or claims. Inadvertent submissions of false claims which are subsequently discovered by the beneficiary of such a claim and not disclosed to the State or political subdivision prior to the filing of an action under Section 4, will be treated the same as an intentionally submitted false claim.

Subsection 4(b).  Reduction of Liability for Certain Acts

Notwithstanding the provisions of subsection 4(a) above, a person found to be in violation of this Act may be eligible for a reduction in liability to no more than double (2) the amount of damages which the State or political subdivision sustains and no civil penalties. By limiting a person's liability under the Act, this subsection provides an incentive for persons who have violated the Act to voluntarily disclose such information.

However, to be eligible for a reduction of liability under this subsection, stringent eligibility requirements must be met. The Court must find (1) that the person committing the violation voluntarily furnished all information known to him or her concerning the violation to the officials responsible for investigating the false claims violation; (2) that such information was furnished to the responsible officials within 30 days after the person first obtained the information; (3) that

LG45#1

65            - 9 -

the person fully cooperated with any investigation conducted by the State or political subdivision, and (4) that at the time information about the violation was furnished, no criminal prosecution, civil action, or administrative action had commenced with respect to such violation, and the person had no actual knowledge of the existence of an investigation into such a violation.

Although the thought of showing leniency to self-professed defrauders is admittedly unappealing, the State, political subdivision and citizenry of California will benefit on two levels. First, by encouraging violators to come forward on their own accord, the Act increases the potential recovery for the State or political subdivisions a hundred-fold. For example, violations that may not otherwise be discovered will be revealed, and claims otherwise too small to be pursued in a full-scale prosecution may also be coaxed into the open. Second, by requiring full information and cooperation by the violator as a prerequisite to a reduction of liability significant State and political subdivision prosecutorial resources will be conserved.

Therefore, this subsection promotes both an effective means of uncovering fraud without the cost and delay of a full scale investigation, and an efficient means of recovering funds such that recovery may be had on claims too small to litigate or too hidden to be otherwise discovered.

/

/

/

LG45#1

_should these be excluded ?_

## Subsection 4(c).  Exclusion

The California False Claims Act shall not apply to claims, records, or statements made under the California Revenue and Taxation Code.  Including tax claims would undoubtedly produce a flood of cases that would overburden the Attorney General and distract attention from the larger scale business and procurement fraud that the Act is designed to address.

## Section 5.  Civil Actions for False Claims

Subsections 5(a) and 5(b) pertain to actions based solely on the investigation of the Attorney General or prosecuting authority, as differentiated from those initiated by qui tam plaintiffs.

Subsection 5(a) authorizes the Attorney General to investigate and bring actions on those false claims violations involving state funds exclusively and those violations involving both State and political subdivision funds.  In instances involving mixed funds, the Attorney General must serve, on the same date the claim is filed in the action, a copy of the complaint on the appropriate prosecuting authority.

The prosecuting authority then has the right to intervene within 60 days after receipt of the complaint.  The prosecuting authority may also intervene after the 60-day period, but only upon a showing that all of the requirements of the California Code of Civil Procedure § 387 have been met.

Subsection (b) authorizes the prosecuting authority of a political subdivision to investigate and bring action on those false claims violations involving political subdivision funds

LG45#1

exclusively and those violations involving both state and political subdivision funds.

In instances involving both state funds and political subdivision funds, the prosecuting authority must serve, on the same date the claim is filed in the action, a copy of the complaint on the Attorney General.  The Attorney General then has 60 days after receiving the complaint to exercise one of two options:  (1) the Attorney General can notify the Court that it intends to proceed with the action and assume primary responsibility, or (2) the Attorney General can decline to take over the action.  If the Attorney General assumes primary responsibility, the prosecuting authority has the right to continue as a party to the action.  If the Attorney General declines to proceed, the prosecuting authority has the right to conduct the action.

Subsections 5(a) and 5(b) are intended to set guidelines for the responsibilities of the Attorney General and prosecuting authority in various instances.  The goal is to create a cooperative environment between the State and political subdivisions in the investigation and prosecution of false claims actions.  These subsections seek to create a mechanism whereby information and expertise will be exchanged between the State and political subdivisions.  At the same time, the subsections clearly designate the party with primary responsibility at all times, so that the system of dual authority will not create confusion and lead to inefficiency.

/

/

## Subsection 5(c).  Actions by Private Persons

This section is designed to provide a clear procedural blueprint for private persons who are contemplating bringing a false claims action on behalf of the State or political subdivision.  A person bringing such an action is a _qui tam_ plaintiff.  Under paragraph (c)(1) of this section a _qui tam_ plaintiff may either bring an action on behalf of the State, if _any_ State funds are involved, or on behalf of the political subdivision if political subdivision funds are exclusively involved.  These procedures were created for the purpose of promoting the effective and efficient prosecution of false claims while simultaneously increasing cooperation among the various prosecutorial entities of the State and reducing confusion as to the role of each in the investigation, intervention, and prosecution of a _qui tam_ action.

Thus, if a _qui tam_ plaintiff is alleging false claims violations which involve _only_ State funds, such a complaint and written disclosure of substantially all material evidence and information the person possesses should be directed to the State Attorney General pursuant to paragraph 5(c)(3).  On the same day as the information is provided to the State Attorney General, the complaint must be filed in Superior Court in camera where it shall remain under seal for up to 60 days.  Within that 60 day period (if no extensions are granted), the Attorney General must either decide to proceed with the action pursuant to 5(c)(4)(A) or decline to proceed with the action, which allows the _qui tam_ plaintiff to proceed with the action pursuant to 5(c)(4)(B).  In either circumstance 5(c)4(A) or 5(c)4(B) above, the Attorney

General must notify the court of his decision and the Court shall lift the seal and allow the defendant to be notified.  The defendant shall not be served with the complaint until after the seal on the complaint is lifted.  If the Attorney General should receive a complaint and written disclosure of material evidence involving only political subdivision funds, the Attorney General is required to forward this information to the appropriate political subdivision within 15 days.  The political subdivision shall then have up to 45 days to notify the court whether it will proceed with the action or decline to proceed with the action in which case the seal will be lifted, and the qui tam plaintiff will proceed with the action.

While most complaints involving only political subdivision funds will most likely be directed to the appropriate political subdivision, section 5(c)(4)(A) and 5(c)(4)(B) are designed to address the confusion that may occur when the Attorney General receives information about a false claim that does not involve State funds.  The Attorney General should be allowed a reasonable amount of time to locate and inform the appropriate prosecuting authority of the relevant political subdivision that this information will be forwarded. The prosecuting authority of the political subdivision will then have 45 days to investigate the claim and decide whether or not to proceed with the action.  If the prosecuting authority declines to proceed with the action, the qui tam plaintiff may then proceed with the action.

The 45-day time limit for prosecuting authorities in this instance was created so that in conjunction with the 15-day

time limit provided for the Attorney General, a qui tam plaintiff would not be required to wait more than 60 days before proceeding with the action, thereby promoting the efficient disposition of claims. The rationale behind these subparagraphs is that 45 days is sufficient time for a prosecuting authority to decide not to take the case. Therefore, the qui tam plaintiff who is willing to proceed with the action immediately should not have to wait up to 60 days beyond the 15 days allowed to the Attorney General to proceed with the action.

Should the prosecuting authority require further time to investigate a claim, an extension of time pursuant to 5(c)(7) is available to either the Attorney General or the prosecuting authority upon a showing of good cause and reasonable diligence in its investigation.

The above discussions focus on actions initiated by qui tam plaintiffs which involve solely State funds or solely political subdivision funds.

Subparagraphs 5(c)6(A)-(C) are designed to promote efficiency and cooperation in those circumstances where the Attorney General receives a complaint alleging violations involving both State and political subdivision funds. Under subsection 5(c)(6)(A) the Attorney General is allowed 15 days within which to forward copies of the complaint and written disclosure of material evidence to the appropriate prosecuting authority in a mixed-fund case. The Attorney General is then charged with coordinating its review and investigation of the claims with those of the prosecuting authority.

Coordinating and review responsibility in mixed-fund cases is vested in the Attorney General in order to provide a centralized locus for the dissemination and compilation of information concerning a particular false claims case.  Thus, if a case involves funds from various political subdivisions (e.g., cities, counties, school districts) and some State funds, the Attorney General, by virtue of its involvement in every claim involving State funds, is in the best position to evaluate what, if any, political subdivision funds are involved and notify the appropriate prosecuting authorities.

Within 60 days after receiving a complaint alleging violations of both State and political subdivision funds, the Attorney General shall notify the Court that pursuant to subparagraph 5(c)(6)(B)(i) it intends to proceed with the action; declines to proceed with the action but that the prosecuting authority of the political subdivision involved will so proceed pursuant to 5(6)(B)(ii); or both it and the prosecuting authority decline to proceed with the action in which case the qui tam plaintiff may proceed with the action pursuant to 5(6)(B)(iii).

In each of the above situations, if the Attorney General notifies the Court of its intention prior to the expiration of the 60-day period, the seal shall be lifted, and the action allowed to proceed as of that time.

Should the Attorney General decide to proceed with a mixed funds false claim action, pursuant to subparagraph 5(c)(6)(B)(i), the political subdivision whose funds are involved shall be permitted to intervene in the action within 60

LG45#1

days after the Attorney General notifies the Court of its
intentions. This provision of paragraph 5(c)(6)(C) allowing the
political subdivision to intervene as of right in an action
prosecuted by the State was designed to foster the atmosphere of
cooperation first created during the investigation stage of the
claim, and to insure that the political subdivision can protect
its interest. Intervention after the 60-day period may be
permitted by the Court upon a showing that the requirements of
California Code of Civil Procedure § 387 have been met.

Finally, under section 5(c)(8) when a private person
brings an action as a *qui tam* plaintiff no other person may
bring a related action based on the same facts underlying the
pending action. The purpose of this provision is to eliminate
multiple suits arising from the same transaction or occurrences.
Such suits bring forth no new information and serve only to
harass the defendant and delay prosecution.

Subsection 5(d).  Certain Actions Barred

No court shall have jurisdiction over an action
brought under subsection (c) against a member of the State
Senate or Assembly, a member of the State judiciary, an elected
official in the executive branch of the State, or a member of
the governing body of any political subdivision if the action is
based on evidence or information known to the State or political
subdivision when the action was brought.

Subsection (d)(2) prohibits *qui tam* suits based on
allegations which are already "the subject of a civil suit or
administrative civil money penalty proceeding" to which the

State or political subdivision is a party.

Subsection (d)(3) disallows jurisdiction for qui tam actions based on allegations or transactions disclosed in (1) a criminal, civil, or administrative hearing; or (2) in an investigation, report, hearing, or audit conducted by or at the request of the State Senate, State Assembly, State Auditor, or governing body of a political subdivision; or (3) in the news media, unless the action is brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information.

For purposes of paragraph d(3)(A), an "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based, who voluntarily provided the information to the State or political subdivision before filing an action", and "whose information provided the basis or catalyst" for the investigation, hearing, audit or report "which led to the public disclosure." This definition limits potential qui tam plaintiffs to those who can best provide the information needed for a successful false claims action under Section 4. This limitation becomes especially crucial in circumstances where a violation has been made public and the person who originally provided the information to the government must now race to the courthouse before another person with possibly less information files first and precludes other actions based on the same information. This definition also encourages greater cooperation between potential qui tam plaintiffs and the State or

prosecuting authority prosecuting the action.

Subsection (d)(4) prohibits a present or former employee of a State or political subdivision from bringing a _qui tam_ suit based on information discovered during the course of employment unless the employee first in good faith exhausts "internal procedures for reporting and seeking recovery" of false claims sums and unless the State or political subdivision fails "to act on the information provided within a reasonable time period."

This subsection encourages State of political subdivision employees' continued use of internal methods for reporting and recovering false claims. However, this does not intend in any way to limit the employee's ability to file a false claims action if, after exhausting all internal methods and allowing a reasonable amount of time, the State or political subdivision has failed to act. The legislature also recognizes and intends to limit the potential monetary windfall of such public employees whose positions would enable them to be the "original source" for numerous false claims actions. Recognizing the potential monetary windfall to government employees whose positions would enable them to be the "original source" for numerous false claims actions, section (g)(4) of this section places specific limits on the potential recovery of a _qui tam_ plaintiff who is a State or political subdivision employee.

/

/

/

### 5(e).  Rights of the Parties of Qui Tam Actions if the State or Political Subdivision Elects to Proceed

This subsection provides that if the State or political subdivision elects to proceed with a _qui_ _tam_ action, the State or political subdivision shall have the primary responsibility for prosecuting the action.  However, the person bringing the action has the right to continue as a full party to the action.

By allowing the person initiating the action to take an active role in the litigation if he or she chooses, the Act assures individuals knowing of fraud who are otherwise unwilling to make disclosures -- in light of potential personal and financial risk as well as a lack of confidence in the State or local government's ability to remedy the problem -- that such individual's concerns and interests will not be disregarded. This subsection is designed to enhance incentives for exposing false claims against the State and political subdivisions by allowing individuals who make disclosures to participate in seeing that fraud is remedied.  This section provides the _qui_ _tam_ plaintiff with a direct role in keeping abreast of the State and local government's efforts and protecting his or her interests in the action.

Subsections (e)(2)(A) and (e)(2)(B) allow the person who initiated the action to formally object to any proposed settlements or motions to dismiss.  For example, a _qui_ _tam_ plaintiff may raise objections that the settlement or dismissal is unreasonable in light of existing evidence, that the State or political subdivision has not fully investigated the

LG45#1

allegations, or that the State or political subdivision's decision to settle or dismiss the action was based on arbitrary and improper considerations.  These subsections are also designed to insure that the qui tam plaintiff's role in the false claims action shall not be toothless.

### 5(f).  Rights of the Parties of Qui Tam Actions if the State or Political Subdivision Elects Not to Proceed

This subsection provides that the person who initiated the false claims action may proceed with the litigation if the State or political subdivision elects not to intervene and take over the action.  In these circumstances, the qui tam plaintiff is given "the same right to conduct the action as the Attorney General or prosecuting authority would have had if it had chosen to proceed" with the action.

Recognizing that there may be instances when the State or political subdivision chooses not to or is unable to pursue a false claims violation, the qui tam plaintiff must be given the same power as the State or political subdivision to fully pursue the false claims action.  In such instances the State or political subdivision can remain informed of the qui tam action by requesting to be served with copies of all pleadings and depositions associated with the action at State or political subdivision expense.

Section (e)2 allows limited intervention by the State or political subdivision in a qui tam action with which it had initially declined to proceed, upon a showing that the State or political subdivision's interest in recovery of the property or

funds involved is not being adequately represented by the qui tam plaintiff.  In such a case of intervention, the qui tam plaintiff retains principal responsibility for the action and the recovery of the parties is determined as if the State or political subdivision had elected not to proceed.

This section makes it clear that the State or political subdivision is not precluded, even after expiration of the 60-day waiting period, from joining any action brought by the qui tam plaintiff.  However, in this subsection the State or political subdivision's right to intervene must be balanced against the hardship on the qui tam plaintiff, who has invested time and money in contemplation of his or her vigorous pursuit of a false claims action.  It would be unfair and a disincentive to qui tam suits in general if the government could intervene without limitation, assume primary responsibility of a suit already in progress, and thereby preclude the qui tam plaintiff from attaining a greater share of the recovery based on the qui tam plaintiff's role in prosecuting the claim.

## Section 5(g).  Awards to Parties

Section (g) provides guidelines for the division of proceeds from successful false claims actions.  Proceeds are deemed to include civil penalties as well as treble damages. Subsection (g)(6) provides that any portion of a recovery that is not awarded to the Attorney General's Office, the prosecuting authorities' office, or the qui tam plaintiff pursuant to paragraphs (g)(1)-(5) of this section reverts to the State if the underlying false claims involved State funds exclusively,

and to the political subdivision if the underlying false claims involved political subdivision funds exclusively. If both State and political subdivision funds were involved, the Court has discretion to apportion the proceeds between the State and political subdivision based on their respective share of the funds falsely claimed. This assures the return of falsely claimed funds to their proper source.

Paragraph (g)(1) provides award guidelines for suits not involving qui tam plaintiffs. Subparagraph (g)(1)(A) states that if the Attorney General initiates an action based on his own investigation or assumes control of an action initiated by a prosecuting authority involving both State and political subdivision funds, then the Office of the Attorney General will receive a fixed 33% of the proceeds of the action or settlement of the claim.

Subparagraph (g)(1)(B) likewise provides that if the prosecuting authority initiates his own investigation and action, and the Attorney General does not subsequently assume primary responsibility for that action, the office of the prosecuting authority will receive a fixed 33% of the proceeds of the action or settlement of the claim.

By earmarking a fixed 33% of the recovery for the State or political subdivision responsible for the successful prosecution of a false claim, the Act works to replenish resources expended by the parties with the primary responsibility for pursuing false claims actions. This self-perpetuating source of income will allow false claims actions to be pursued without overburdening the resources currently

LG45#1

allocated to the State Attorney General or local prosecuting authorities, and without draining the State or political subdivision's treasury by requiring additional appropriations to implement this Act.

Subparagraph (g)1(C) enables a prosecuting authority without primary responsibility who helps in the investigation and prosecution of false claims to share in the recovery. The Court is given discretion under this paragraph to award the prosecuting authority who intervenes in an action initiated by the Attorney General or who remains a party to an action assumed by the Attorney General, a portion of the Attorney General's fixed 33% of the recovery. The Court must take into account the prosecuting authority's role in the investigation and action when deciding the portion to be awarded.

By allowing for splitting of the fixed 33% award, the Act provides incentive and means to foster cooperation between the dual authorities and to avoid duplication of work. The portion of the 33% awarded to each authority will directly correspond to its role in recovery of the false claims sums. Thus, limited resources used in the investigation and prosecution of successful false claims actions will be adequately replenished without additional cost to the taxpayer.

Paragraphs (g)(2), (g)(3), (g)(4), (g)(5), (g)(8) and (g)(9) address award distribution guidelines for qui tam false claims actions. Paragraph (g)(2) and (g)(3) guarantee that the qui tam plaintiff will receive at least a minimum percentage of the proceeds of the action or settlement of the claim. Because of the fear of retaliation and harassment, a potential qui tam

LG45#1                                - 24 -

plaintiff with no guarantee of recovery in a false claims action may decide it is too risky to proceed with an action. Allocating a minimum percentage of the recovery to the *qui tam* plaintiff acknowledges the risks and sacrifices commonly faced by *qui tam* plaintiffs in pursuing a false claims action. The minimum and maximum percentages are set slightly higher than in the federal act because individual State claims may tend to be smaller. Thus, a greater percentage recovery is required to provide the adequate incentive. The State and political subdivisions will still receive the "lion's share" of the proceeds -- substantially more than the loss it would have sustained had the person not brought the evidence of fraud to its attention or advanced the case to litigation. This section does not leave the Court without discretion on the percentage of award granted a *qui tam* plaintiff. Obviously, the contribution of one person might be significantly more or less than the contribution of another. Consequently, the section provides allowable percentages of recovery so that courts may take various factors into consideration and use discretion in determining awards within those ranges.

Paragraph (g)(2) provides that if a *qui tam* plaintiff initiates an action which is taken over by the State or political subdivision within the 60-day waiting period or extensions thereof, the Office of the Attorney General or the office of the prosecuting authority will receive a fixed 33% of the proceeds of the recovery. The Court has discretion to award the prosecuting authority a portion of the Attorney General's fixed 33% of the recovery, if the prosecuting authority

LG45#1

- 25 -

intervenes in an action initiated by the Attorney General.  In addition to the award to the Attorney General or prosecuting authority, the qui tam plaintiff will receive at least 15% but not more than 33% of the proceeds of the action or settlement of the claim.  The Court must take into account the qui tam plaintiff's role in the investigation and action when deciding on the portion to be awarded.

Paragraph (g)(3) provides a qui tam plaintiff who initiates an action which is not taken over by the State or political subdivision within the 60-day period and extensions thereof will receive at least 25% but not more than 50% of the proceeds of the action or settlement.  The Court has the discretion to decide the percentage recovery that is reasonable for work expended in collecting the civil penalty and damages on behalf of the State or local political subdivision.  The larger percentages in Paragraph (3) reward the increased efforts and risks for qui tam plaintiffs who must proceed without the aid of state or political subdivision resources.

Paragraphs (g)(4) and (g)(5) provide exceptions to the general qui tam rules set out in Paragraphs (g)(2) and (g)(3).  These exceptions address two special areas: (1) when the qui tam plaintiff is a present or former employee of the State or political subdivision who initiated an action after exhausting internal procedures in good faith and giving the State or political subdivision a reasonable time to act or (2) the qui tam plaintiff is a present or former employee not limited to a State or political subdivision employee who actively participated in the fraudulent activity.  Under both

LG45#1                                      - 26 -

circumstances described above involving a <u>qui tam</u> plaintiff who is (1) a public employee and (2) a public or non-public employee participating in fraudulent activity, the Act allows but does <u>not</u> guarantee a minimum recovery from the proceeds. The rationale behind this departure from the standard of allowing a minimum recovery in all <u>qui tam</u> actions is based upon the concept of unjust enrichment. For example, a public employee who by the very nature of his or her position has access to the private records, documents, and internal memoranda of the company, should not be allowed to benefit personally from information uncovered during the course and scope of the employment and which rightfully belongs to the respective State or political subdivision employer. Thus, the Act is drafted to require as a threshold matter that the public employee exhaust all means available to apprise the State or political subdivision employer of the false claims violations <u>before</u> bringing a <u>qui tam</u> action.

If after a reasonable amount of time and diligent efforts on the part of the public employee to use official channels, the employee's claims have still not been investigated or pursued, the public employee may bring an action on behalf of the State or political subdivision. If the State or political subdivision proceeds with the action, the public employee <u>qui tam</u> plaintiff may receive up to 33% of the proceeds. If the State or political subdivision does not proceed with the action, the public employee <u>qui tam</u> plaintiff may receive up to 50% of the proceeds. The Court is given the discretion in each instance to determine the exact percent to be awarded. In

LG45#1

- 27 -

making its determination, the Court needs to consider the significance of the information, the role of the _qui_ _tam_ plaintiff in advancing the case, and the scope of, and response to, the employee's attempts to report and recover false claims funds through official channels.

In the case of an employee involved in fraudulent activity, the rationale behind allowing a recovery but <u>not</u> <u>guaranteeing</u> any minimum recovery is based on the dual considerations of wanting to ferret out fraud that would otherwise go undetected, while at the same time not wanting to benefit a person involved in defrauding the State or political subdivisions. The classic example of a person who would fall within this special provision is an employee of a company in charge of billing or auditing procedures who is ordered by a supervisor or higher official in the company to falsely bill the State or political subdivision or be terminated.

The previous lack of incentives or protection for people "caught in the middle" to come forward has prompted a "conspiracy of silence" among workers in industries where such false billing is a common practice. This provision is intended to reassure those people who have succumbed to involvement in false claims against the State or a political subdivision out of fear of losing their jobs that there is a mechanism for redressing their claims and that their knowledge of how the fraud was perpetrated may be used to recover funds instead of defrauding funds. Again, the Court is given the discretion in cases involving fraudulent activity to determine the exact percentage of recovery to be awarded. The Court should consider

LG45#1

- 28 -

the significance of the information, the role of the qui tam
plaintiff in advancing the case, the scope of the present or
past employee's involvement in the fraudulent activity, the
employee's attempts to avoid or resist such activity, and all
other circumstances surrounding the activity.

    Paragraphs (g)(4) and (g)(5) are designed to give the
Court flexibility to award an appropriate sum under the
circumstances. The Court does not have to award inappropriate
windfalls to undeserving employees, but can award the maximum
qui tam percent to deserving employees.

    Paragraph (g)(4) will encourage employees to
diligently use official channels before attempting to bring
suit. Paragraph (g)(5) will encourage employees to resist
pressures to participate in fraudulent activities. At the same
time, the subsections will encourage employees with information
about false claims to step forward.

    Paragraph (g)(8) will provide additional incentives
for bringing qui tam actions. This section states that a qui
tam plaintiff may be entitled to reasonable expenses, reasonable
costs, and attorneys fees. All expenses, costs, and fees will
be awarded against the defendant and under no circumstances are
they to be the responsibility of the State or political
subdivision. This section provides encouragement to qui tam
plaintiffs without any loss to the State or political
subdivision. This section, thereby, avoids potential friction
between qui tam plaintiffs and the State or political
subdivisions.

Paragraph (g)(9) is designed to place a check on the quality and quantity of qui tam suits. This section provides that the prevailing defendants in a civil False Claims Act case brought by a qui tam plaintiff (because the State or political subdivision chose not to intervene), may be eligible for reasonable attorneys fees if the court finds that the qui tam plaintiff's action was "clearly frivolous, clearly vexatious, or brought solely for purposes of harassment. The section is designed to create a strong disincentive to bringing frivolous suits. It sends a clear message to those who might consider using the private enforcement provision for illegitimate purposes. Courts should be encouraged to strictly apply this provision.

### Section 6.  Relief from Discrimination by Employers Against Employees Who Report Violations

This section of the Act provides for protection of "whistleblowers." These protections are patterned after the whistleblower protection provision of the Federal False Claims Act of 1986. (Title 31, Section 3729, et seq.) These provisions recognize that few individuals will expose fraud if they fear their disclosures will lead to harassment, demotion, loss of employment, or any other form of retaliation. The provisions in this section are designed to halt companies and individuals from using the threat of economic retaliation to silence "whistle-blowers," as well as assure those who may be considering exposing fraud that they are legally protected from retaliatory acts.

LG45#1

Subsection 6(a) provides that an employer shall not
"make, adopt, or enforce any rule, regulation or policy
preventing an employee from disclosing information to a
government or law enforcement agency or from acting in
furtherance of a false claims action." This section is intended
to prevent employers from hindering enforcement of this Act.

Subsections 6(b) and 6(c) provide "make whole" relief
for anyone who is discharged, demoted, suspended, denied
promotion, or in any other manner discriminated against by his
employer due to his involvement with a false claims disclosure.
The "protected activity" under this section includes any lawful
acts done by the employee on behalf of the employee or others in
disclosing information to a government or law enforcement agency
or in furthering a false claims action, including investigation
for, initiation of, testimony for, or assistance in an action
filed or to be filed under Section 5. The legislature believes
protection should extend not only to actual qui tam litigants,
but to those who assist or testify for the litigant, as well as
those who assist the government in bringing a false claims
action. Protected activity should therefore be interpreted
broadly.

The definitions of "employee" and "employer" should
also be all inclusive. Temporary, blacklisted, or discharged
workers should be considered "employees" for the purposes of
this act. Additionally, "employer" should include public as
well as private sector entities.

The "make whole" relief provided for in subsection
6(c) includes reinstatement with the same seniority status the

employee would have had but for the discrimination, two times the amount of back pay, interest on back pay, compensation for any special damage sustained as a result of the discrimination, litigation costs, reasonable attorneys' fees, and, where appropriate, punitive damages.

Subsections 6(b) and 6(c) provide relief only if the employee who reports a violation can show by a preponderance of the evidence that the employer's retaliatory actions resulted "because" of the whistleblower's participation in a protected activity. Under federal whistleblower statutes the "because" standard has developed into a two-pronged approach. First, the whistleblower must show the employer had knowledge that the employee engaged in "protected activity," and second the retaliation was motivated, at least in part, by the employee's involvement in protected activity. Once these elements have been satisfied, the burden of proof shifts to the employer to prove affirmatively that the same decision would have been made even if the employee had not engaged in protected activity. Deford v. Secretary of Labor, 700 F.2d 281, 286 (6th Cir. 1983); Mackwiak v. University Nuclear Systems, Inc., 735 F.2d 1159, 1162-1164 (9th Cir. 1984); Consolidated Edison of N.Y., Inc. v. Donovan, 673 F.2d 61, 62 (2nd Cir. 1982). These federal cases involving employee whistleblowers are provided to guide the California courts in interpreting the California False Claims Act.

Subsection 6(d) limits the availability of "make whole" relief to those employees who voluntarily aid in a false claims action and who were not willing participants in the

LG45#1                                    - 32 -

fraudulent activity.  These provisions recognize the importance of encouraging citizens to report fraudulent activities, while refusing to provide protection to willing participants in fraud against the State or local political subdivision.  Therefore, subsection 6(d) protects employees who are coerced by an employer into engaging in fraudulent activity, but later voluntarily disclose information concerning such activity to the State Attorney General or local prosecuting authority or act in furtherance of a false claims action.  Section 6(d) does <u>not</u> protect an employee who is a willing participant in fraudulent activity or an employee who does not voluntarily aid in the false claims action.

*when?*

Jurisdiction for any actions under Section 6 of the California False Claims Act shall be in the Superior Court of the State of California.

## Section 7.  False Claims Procedure; Limitation

Subsection 7(a) provides a statute of limitations.  No action can be brought more than 10 years after the date of the violation.  Because of the hidden nature of fraudulent practices, such a statute of limitations is necessary to ensure the State and local government's rights are not lost through a wrongdoer's successful deception.

Subsection 7(b) provides a retroactive effective date for the Act.  An action may be brought for fraudulent activity occurring prior to the effective date of the Act if the 7(a) statute of limitations has not lapsed.  This retroactive effect enhances the ability of the State and local governments to

*limit retroact. period because w/o intent re (8)*

recover losses sustained as a result of fraud.

Subsection 7(c) makes it clear that in civil fraud actions brought pursuant to this Act, the State, political subdivision, or the _qui_ _tam_ plaintiff are required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.  Since the burden of proof in a civil action is by a preponderance of the evidence and False Claims proceedings are civil and remedial in nature and are brought to recover compensatory damages, the legislature believes the preponderance of the evidence standard is the appropriate burden of proof in a California False Claims action.

Subsection 7(d) provides that a nolo contendre plea in a criminal fraud case shall have collateral estoppel effect in a subsequent civil fraud action.  The general rule in California is that a nolo plea would have no collateral estoppel effect in related civil proceedings.

Given the high priority which should be afforded to the effective prosecution of false claims cases, an exception to the general rule should be made.  Individuals who cheat the State or local government should not be able to hide behind a nolo plea.

SENATE COMMITTEE ON JUDICIARY
Bill Lockyer, Chairman
1987-88 Regular Session

AB 1441 (Floyd)
As amended July 9
Hearing date:  July 14, 1987
Government Code
GWW

A
B

1
4
4
1

## FALSE CLAIMS AGAINST STATE

### HISTORY

Source:  Center for Law in the Public Interest

Prior Legislation:  None

Support:  Attorney General; CTLA; California Welfare Rights
          Organization, Inc.

Opposition:  Associated General Contractors of California

Assembly Floor Vote:  Ayes 42 - Noes 35

### KEY ISSUE

SHOULD THE KNOWING FILING OF A FALSE CLAIM AGAINST THE STATE OR A
POLITICAL SUBDIVISION BE SUBJECT TO A CIVIL PENALTY OF $5,000 TO
$10,000 AND TREBLE DAMAGES?

### PURPOSE

Existing law makes it a crime for any person to present to
specified public officers for allowance or payment any false or
fraudulent claim, bill, account, voucher, or writing with the
intent to defraud.

This bill would make any person "jointly or severally" liable to
the state or a political subdivision for a civil penalty of
$5,000 to $10,000 and treble damages if the person knowingly
presents, makes, uses, or causes to be presented, made, or used,
any false or fraudulent claim to the governmental entity for
payment or approval, or engages in specified related conduct
involving false claims.  The bill additionally would:

--Require the Attorney General (AG) and the prosecuting authority
  of a political subdivision to diligently investigate violations
  of this provision.

(More)

AB 1441 (Floyd)
Page 2

--Authorize the AG or local prosecuting authority and any private person to bring a civil action for a violation.

--Permit the AG or local prosecuting authority to intervene in an action brought by private party depending on whether state or local moneys were involved. The bill would set forth procedures for private party "qui tam" actions, including permitting a court to limit the qui tam plaintiff's discovery rights and participation in the action.

--Prohibit the employer from making any rule or taking any other actions to discourage an employee from reporting information regarding false claims and would provide for sanctions against an employer who violates that prohibition.

--Bar a defendant from denying the essential elements of the charges in an action brought under this bill if a guilty verdict (based either on a verdict or a plea of guilty or nolo contendere) was rendered in a criminal proceeding for the same prohibited actions.

--Would provide that a civil action may be filed for up to 10 years after the date of the violation.

The purpose of this bill is to enact serious civil penalties for the making of a false claim against the state or a local political subdivision.

COMMENT

1. Stated need for bill

    According to the Center for Law in the Public Interest, the source of this bill, AB 1441 is modeled after the recently amended federal False Claims Act which the Center helped to rewrite. That effort was brought about when employees of defense contractors called the Center to report fraudulent overcharges within the industry, but felt unsure as to their legal rights. The Center's research uncovered a little used, 125-year old Act, the False Claims Act, which was originally passed in 1863 to combat widespread fraud, corruption, and misuse of federal funds during the Civil War. The Center drafted substantial amendments which were enacted by Congress to strengthen the Act.

(More)

AB 1441 (Floyd)
Page 3

That federal Act, however, applies only to federal claims, and the Center found that many complaints involve misappropriation of state, county, school district or municipal funds. The finding has prompted the Center to draft this state version of the federal legislation.

Summarily, this bill would create a new civil cause of action against those who defraud the state or local government. Treble damages and civil penalties could be awarded against the perpetrator. The Attorney General, local prosecuting authority, or a private party whistleblower could bring the action. The bill would also enact special employment protections for the whistleblower.

Proponents argue that enactment of AB 1441 would benefit the state in three ways: (1) adoption of the bill will make available a new and significant weapon to combat a serious, ongoing problems; (2) this benefit is gained without any increase in government personnel costs or in government bureaucracy; and (3) it provides a mechanism for encouraging state and local authorities to cooperate in ferreting out fraud.

2.  Scope of bill

Generally, the bill would penalized the "knowing" filing of a false "claim". The term "knowing" or "knowingly" is defined to mean any of the following:

(a)  Has actual knowledge of the information.

(b)  Acts in deliberate ignorance of the truth or falsity of the information.

(c)  Acts in reckless disregard of the truth or falsity of the information.

The term "claim" includes "any request or demand for money, property, or services made to any employee, officer, or agent of the state or of any political subdivision . . . if any portion of the money . . . requested or demanded . . . was provided by . . . state funds or political subdivision funds."

As noted in the Center's report: "This definition covers claims for reimbursement under MediCal where no services were provided, or where services were provided but the claimant is

(More)

225

AB 1441 (Floyd)
Page 4

ineligible to participate in the program.  This definition
also covers false demands made upon grantees or recipients of
State or political subdivision funds for any portion of the
funds."  In short, it would apply to any fraudulent
procurement or misappropriation of funds derived from a state
or political subdivision source.

Further, as noted by the Center, the act of knowingly filing
a false claim would be sufficient; payment on the claim is
not necessary for a civil action.

3.    Possible overbreadth in application

According to the proponent, the Act is designed to address
"larger scale business and procurement fraud."  Yet, as
proposed, the Act would also apply to relatively de minimus
acts, such as the improper procuring of medical treatment
under MediCal.  In order to focus the resources of law
enforcement and the courts toward the larger scale fraud, the
Committee may wish to create a minimum jurisdictional
threshold (such as $500 or $1,000) for the filing of these
actions.  Such a threshold would discourage filings over
"minor" violations.

This idea was raised in the Assembly hearing, but was
abandoned after concerns were raised that a minimum threshold
might be interpreted as a legislative sanctioning of "minor"
violations.  That concern may be addressed, however, by
Legislative intent language which declares that the threshold
level is intended to focus prosecutorial direction towards
the larger cases and that the smaller "minor" cases would
still be punishable pursuant to existing penal sanctions for
fraud.

SHOULD A MINIMUM THRESHOLD AMOUNT BE ESTABLISHED FOR THE
MAINTENANCE OF THESE ACTIONS?

4.    Possible impact on litigation claims

One of the 8 enumerated ways to file a false claim is to
"knowingly presents or causes to be presented . . . a false
claim for payment or approval."

Concern has been expressed that the prohibition could be
interpreted to apply to a person or attorney who presents a
claim for personal injury damages to the state or local
entity under the Tort Claims Statute as a prerequisite to

(More)

AB 1441 (Floyd)
Page 5

filing suit.  Arguably, since the claim amounts in such cases
are usually speculative and likely to be exaggerated, such
claims could fall under the prohibition.  Proponents say that
the statute is not intended to and would not apply to such
cases or to litigation claims in general.

SHOULD THE BILL BE AMENDED TO CLARIFY THAT IT DOES NOT APPLY
TO LITIGATION CLAIMS?

5.  Impact on negligent claimant

Another way to file a false claim is to be "a beneficiary of
an inadvertent submission of a false claim to the state or a
political subdivision, [who] subsequently discovers the
falsity of the claim, and fails to disclose the false claim
to the state or the political subdivision prior to the filing
of an action under this section."

According to the proponent, this provision is intended to
reach situations where a person benefits from grossly
negligent or inattentive business practices with the
government by the inadvertent submission of a false claim.
The provision will treat such submissions which are
subsequently discovered by the beneficiary but not disclosed
to the State prior to the filing of a civil action as an
intentionally submitted false claim.

SHOULD THE FAILURE TO REPORT AN INADVERTENT CLAIM BE TREATED
AS AN INTENTIONAL FILING OF A FALSE CLAIM IN ALL CASES?

A rigid rule may be unfair.  For example, Clerk A for the
medical provider physician or construction contractor files
an "inadvertent" inaccurate claim for services.  Upon
discovering the error, the employer advises the clerk to
report the error to the contracting governmental entity.
Clerk B, recently discharged by the employer for unrelated
reasons, knows of the error and reports it before Clerk A has
had a reasonable opportunity to correct the error.

Under the above example, both the employer and Clerk A could
be liable for treble damages and the statutory civil penalty.

6.  Mitigation clause

If a person violating the act (a) reports the violation
within 30 days, (b) fully cooperates with any investigation,
(c) furnishes the information about the violation before

(More)

227

AB 1441 (Floyd)
Page 6

someone files criminal, civil or administrative proceedings, and (d) does not have actual knowledge of an investigation, he/she would be subject only to a penalty of double to treble damages and would not be liable for any additional civil penalty.

This mitigation clause would not be available to the inadvertent violator, however, because the violator would not have reported the violation before commencement of an action against him.

SHOULD THE LESSOR PENALTY APPLY TO THE INADVERTENT VIOLATOR IF HE COOPERATES WITH THE PROSECUTING AUTHORITY IN ALL OTHER RESPECTS?

7.  Other actionable fraudulent conduct

In addition to the two bases for a civil damages and penalty action noted in Comments 4 and 5 above, the following conduct would also be actionable where the person:

a)  Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision.

b)  Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.

c)  Has possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt.

d)  Is authorized to make or deliver a document certifying receipt of property used or to used by the state or by any political subdivision and knowingly makes or delivers a receipt that falsely represents the property used or to be used.

e)  Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who unlawfully may not sell or pledge the property.

f)  Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease

(More)

228

AB 1441 (Floyd)
Page 7

> an obligation to pay or transmit money or property to
> the state or to any political subdivision.

8. <u>Tax claims exempted</u>

The bill would not apply to tax claims in recognition that
inclusion would undoubtedly produce a flood of cases that
would overburden the Attorney General.

9. <u>Protection for whistleblowers and helpless employees</u>

This bill would set forth specific provisions intended to
protect employees who report fraudulent conduct specified by
the bill.  Employers are prohibited from interfering  with an
employee's right to pursue a fraudulent claims case.
Specific provisions are also provided to protect employees
who were coerced to participate in the unlawful conduct or
who voluntarily disclose information to and cooperate in the
prosecution by the government.  (See Section 12653.)  The
bill also would enact specified remedies against an
employer-violator, including full reinstatement, double back
pay, special damages, and, when appropriate, punitive
damages.

The bill, however, would not enact a defense against a civil
action for an employee who was coerced into filing a false
claim and failed to report the action.  Proponents argue that
prosecutors are not likely to pursue actions against these
violators.

SHOULD THE MATTER BE LEFT TO PROSECUTORIAL DISCRETION?

10. <u>Procedures for private "qui tam" action</u>

This bill would permit a private person (a "qui tam
plaintiff") to bring a civil enforcement action for himself
and either in the name of the State or a local political
subdivision.  A qui tam action must be filed in Superior
Court in <u>camera</u> and a copy of the complaint must be served on
the Attorney General, who in turn would notify local
authorities if local funds were involved.  The suit would
remain under seal for up to 60 days to permit the Attorney
General or local authority to investigate and determine
whether to intervene.  The court may also stop the qui tam
plaintiff's discovery in the action for up to 60 days (or
more upon a showing of good cause) if the discovery would
interfere with an ongoing criminal or civil investigation or
proceeding.

(More)

AB 1441 (Floyd)
Page 8

If the Attorney General or local authority decides to
intervene, that authority may move to limit the qui tam
plaintiff's unrestricted participation where that
participation would unduly interfere with or delay the
prosecution of the case, or would be repetitious, irrelevant,
or for purposes of harassment.

(a)  Exception to qui tam actions:  Suits against elected
     officials

     This bill would prohibit an qui tam action to be brought
     against a member of the Legislature, judiciary, or
     elected executive branch official, or a member of a
     governing body of a political subdivision if the action
     is based on evidence or information known to the state
     or political subdivision when the action was brought.
     The sponsor states that this provision is to limit
     harassment of public officials who are currently under
     investigation.

     The exemption, however, does not immunize these
     officials from fraud actions brought directly by the
     State or the political subdivision.

(b)  Other exceptions

     The bill would also bar qui tam suits based on
     allegations which are "already the subject of a civil
     suit or administrative civil money penalty proceeding in
     which the state or political subdivision is already a
     party."

     It would also bar qui tam suits based on allegations or
     transactions disclosed (1) in a civil, criminal, or
     administrative hearing, or (2) in an investigation,
     report or audit conducted by the State Legislature,
     State Auditor, or a local governing body; or (3) in the
     news media, unless the person bringing the action is the
     original source of the information.

     This provision is intended to reward the first
     whistleblower, and to prevent other "bandwagon"
     whistleblowers from reaping the benefits of the
     disclosure.

     The bill would also prohibit a present or former
     employee of the state or political subdivision from

                                                  (More)

AB 1441 (Floyd)
Page 9

bringing a qui tam suit based on information discovered
during the course of employment unless the employee has
exhausted "internal procedures for reporting and seeking
recovery .. through official channels."

11. <u>Ten-year statute of limitations</u>

This bill would provide that a civil action may be filed for
up to 10 years after the date on which the violation
occurred. Conceivably, a party may have known of the
fraudulent conduct soon after its commission, but delayed in
filing an action for nearly 10 years.

SHOULD THERE BE A PERIOD WITHIN WHICH AN ACTION MUST BE FILED
AFTER THE CONDUCT HAS BEEN DISCOVERED?

12. <u>Possible ex post facto law</u>

The constitutional prohibition against ex post facto laws has
applied only in the context of criminal statutes. This bill
would create a significant civil penalty of up to $10,000 for
a violation, which is equivalent to the usual maximum fine
for a felony offense. To the extent that this provision is
applied to acts occurring prior to its effective date, which
would be permitted by the bill, the bill could create an
unlawful penalty in violation of the ex post facto
prohibition.

13. <u>Division of proceeds</u>

This bill would specify the compensation each plaintiff is to
receive, based upon success and extent of involvement in the
litigation. The AG or prosecuting authority which initiates
and controls the action is to receive 33 percent of the
award. Such funds would be used to support ongoing
investigation and prosecution of false claims. If a
prosecuting authority intervenes in the AG action, it may
share in the 33 percent.

A private citizen bringing such an action into which a public
entity intervenes and controls is entitled to at least 15
percent but not more than 33 percent and the public entity
receives 33 percent. If the citizen proceeds alone with the
action, the amount shall be not less than 25 percent nor more
than 50 percent.

(More)

231

AB 1441 (Floyd)
Page 10

An employee of the state or political subdivision is not entitled to any minimum recovery, and the maximum recovery is the same as for a citizen.

The balance of the proceeds are payable to the entity which was harmed by defendant's conduct.

14. Provision for attorney's fees

In a qui tam action, the court may award against the defendant and for the prevailing qui tam plaintiff an amount for expenses, including reasonable costs and attorney's fees. Similarly, in a qui tam action prosecuted solely by the private party, the court may award the prevailing defendant its reasonable attorney's fees and costs if the claim was clearly frivolous, clearly vexatious, or brought solely for purposes of harassment.

15. Reported opposition

The Associated General Contractors are reportedly opposed to this bill. However, its' representatives have not advised staff of that fact or of the reasons for the reported opposition.

16. Technical concern

As drafted, the bill provides that "any person who commits [an offense] is jointly and severally liable...." From a technical standpoint, this is imprecise. A single person, acting alone, cannot be held jointly and severally liable. That doctrine applies only when several actors act in concert. A technical amendment would solve the problem.

**********

(More)

SENATE JUDICIARY COMMITTEE

JULY 14, 1987

STATEMENT ON AB 1441

MR. CHAIRMAN AND MEMBERS:

THIS BILL LETS THE STATE RECOVER TREBLE DAMAGES PLUS PENALTIES FROM CONTRACTORS WHO TRY TO RIP OFF THE TAXPAYER.  THE BILL LETS WHISTLEBLOWERS SUE DIRECTLY ON BEHALF OF THE STATE AND GET A PERCENT OF THE PROCEEDS.

THIS BILL IS MODELED UPON THE RECENTLY ENACTED FEDERAL "FALSE CLAIMS AMENDMENTS" AUTHORED BY CONGRESSMAN HOWARD BERMAN, AND COAUTHORED BY REPUBLICAN SENATOR CHARLES GRASSLEY OF IOWA.

THE FEDERAL LAW WAS PUT TOGETHER BY THE CENTER FOR LAW IN THE PUBLIC INTEREST WHICH ALSO DRAFTED THIS BILL.

THE BILL IS SUPPORTED BY THE CALIFORNIA TRIAL LAWYERS AND THE ATTORNEY GENERAL.